660 A.2d 1055

**Luisa PRANDE**

v.

**John T. BELL, et al.**

**No. 1725, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

July 3, 1995.

638

Christopher G. Hoge (Crowley, Hoge & Fein, P.C., on the brief), Washington, DC, for appellant.

Elbert R. Shore (John T. Bell, and Bell, Shore & Rehder, on the brief), Rockville, for appellees.

Argued before WILNER, C.J., and ALPERT and CATHELL, JJ.

ALPERT, Judge.

In this case of first impression, we are asked to decide whether an attorney may be held liable for malpractice because of allegedly inadequate settlements of personal injury claims.

On September 21, 1993, Luisa Prande, appellant, filed a complaint in the Circuit Court for Montgomery County, alleging legal malpractice against John T. Bell and Elbert R. Shore, appellees. The alleged malpractice arose out of two personal injury lawsuits in which appellees had represented appellant as her attorneys. Appellees filed a general denial answer, raising several affirmative defenses.

On February 7, 1994, appellant filed an Amended Complaint, naming the law firm of Bell, Cornelius & Shore and Frank S. Cornelius, a partner in the firm, as additional party defendants. On March 31, 1994, appellees Bell and Shore

filed a motion for summary judgment. Appellee Cornelius filed his own motion for summary judgment on May 10, 1994, including therewith an affidavit indicating that he had withdrawn from the partnership prior to some of the acts alleged to be malpractice.

The circuit court held a hearing on both motions for summary judgment on July 21, 1994. Both motions were granted and summary judgment was entered in favor of appellees. This appeal followed, wherein appellant asks this Court to address the following three issues:

I. Whether the trial court erred in ruling that appellant was barred by the doctrine of collateral estoppel from suing her previous attorneys for legal malpractice in two personal injury cases, due to appellant's having signed a release upon settlement of the first such case and her failure to contest an alleged settlement of her second personal injury claim.

II. Whether the trial court erred in ruling that appellee Cornelius cannot be held liable for the alleged negligence of his partners because he withdrew from the partnership after one incident of alleged negligence but before the second incident.

III. Whether appellant's Amended Complaint is barred by the applicable statute of limitations whe[n] one of the two acts of alleged malpractice occurred more than three years before the filing of the Amended Complaint, but the Amended Complaint was filed less than three years after appellant discovered the basis for her cause of action.

We hold that the trial court erred in finding that appellant was collaterally estopped from bringing her legal malpractice claim and in granting summary judgment for appellee Cornelius based on the statute of limitations.

## Facts and Proceedings

On April 24, 1988, in Gaithersburg, Maryland, appellant was involved in a motor vehicle accident with Susan Spillman (the

"Spillman accident"). Appellant retained John T. Bell and the firm of Bell, Cornelius & Shore to represent her in her claim against Ms. Spillman for personal injuries and damages arising out of this accident. Appellant claimed that the accident was solely and exclusively due to Ms. Spillman's negligence and that she was not in any way contributorily negligent. She also alleged that, as a direct and proximate result of the Spillman accident, she suffered permanent and extensive injuries, including a severely ruptured disc in her neck for which she underwent surgery on April 2, 1990. In addition, appellant claimed loss of income and pain and suffering.

On September 26, 1988, appellant was involved in another automobile accident in Montgomery County, this time with Lance J. Wishart (the "Wishart accident"). On December 7, 1988, appellant entered into another agreement with John T. Bell and the firm of Bell, Cornelius & Shore, for representation in her case against Wishart for personal injuries and damages resulting from the accident. Appellant contended that Mr. Wishart was solely and exclusively negligent and that she was not in any way contributorily negligent in the accident. She further alleged that, as a direct and proximate result of the accident, she suffered an exacerbation of the injuries she received in the Spillman accident, as well as additional pain and suffering and loss of income.

The firm filed suit against Wishart in the District Court of Maryland for Montgomery County on appellant's behalf in June, 1989.[1] The case against Wishart was subsequently refiled in the Circuit Court for Montgomery County, case # 65298, and trial was set for May 26, 1992. In August, 1989, the firm filed suit on appellant's behalf in the Circuit Court for Montgomery County against Spillman.[2] Trial was scheduled for September 25, 1990. Elbert R. Shore handled both of appellant's cases for the firm.

---

1. This was case number 12014–89.

2. This case was number 46234.

Prior to the scheduled trial date for the Spillman accident, Shore advised appellant that she should settle her claim for $7,500. At that time, Ms. Prande's total medical bills exceeded $20,000 and she had continuing symptoms for which the doctors had recommended additional surgery. According to an affidavit filed by Shore, he recommended this settlement based on his consultation with Dr. Bernard Stopak, appellant's doctor, about the nature and cause of her injuries. Dr. Stopak had examined Ms. Prande in March of 1990, and had filed a report stating that she told him she had experienced neck and arm pain after the Spillman accident. The report also stated that Ms. Prande told him that she had been involved in another accident three months after the Spillman accident, but that she had not sought medical attention for that accident. According to Dr. Stopak, Ms. Prande told him that her injuries were incurred in the Spillman accident; she had not suffered any injuries in the Wishart accident. Based on this information he received from Ms. Prande, Dr. Stopak was prepared to testify that the Spillman accident had more likely than not caused Ms. Prande's neck injuries.

During her deposition taken in the case against Spillman, Ms. Prande admitted that the Wishart accident had not worsened her condition. She further stated that Dr. Nichols, her chiropractor, had told her that the Wishart accident did not cause any aggravation of her condition. Additionally, Ms. Prande told Dr. Ramon Jenkins, a physician who examined her at the request of Spillman's attorney, that as a result of the Wishart accident, "My nerves were wrought, I was not hurt." Despite these statements that she was not injured in the Wishart accident, Ms. Prande informed Dr. Nichols that she had in fact been injured in the Wishart accident. Once Shore made Dr. Stopak aware of this information, Dr. Stopak relayed that he could no longer testify on Ms. Prande's behalf. Dr. Stopak said he could not now testify to a reasonable degree of medical probability that the Spillman accident caused the injuries because his previous opinion had been based on the belief that Ms. Prande had not been injured in the Wishart accident.

In Shore's opinion, without Dr. Stopak's testimony and given Ms. Prande's inconsistent statements concerning which accident caused her injuries, there were severe problems in establishing liability against Spillman for her injuries. Shore stated in his affidavit:

Without Dr. Stopak's testimony Ms. Prande did not have expert testimony that her neck injuries were proximately caused by the Spillman accident. In addition, I felt that Ms. Prande's credibility was severely undermined by her conflicting statements as to whether she had been hurt in the [Wishart] accident. The physical evidence did not help either—the accident had occurred in a condominium drive way [sic] at moderate (15–25 mph) speed. Finally, causation and damages was [sic] further complicated because Ms. Prande had been involved in a third automobile accident in August of 1990.

Based on this, Shore concluded that Ms. Prande's case with respect to liability was weak, and he recommended that she settle her claim for $7,500. In reliance on Shore's advice that she had no other choice, Ms. Prande agreed to settle her claim against Spillman.[3]

---

**3.** The release she executed provided, in part:

FOR THE SOLE CONSIDERATION of Seven Thousand Five Hundred Dollars ($7,500.00), the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges Susan Spillman and the State Farm Mutual Automobile Insurance Company, their heirs, executors, administrators, agents and assigns, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 24th day of April, 1988, at or near Gaithersburg, Montgomery County, Maryland.

\* \* \* \* \* \*

The undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or other-

On March 26, 1992, Shore advised Ms. Prande to settle her suit against Wishart for $3,000. At that time, appellant's hospital and medical expenses were reaching $30,000 and she needed additional surgery. Shore's recommendation was based on the fact that Ms. Prande had already testified under oath in the Spillman case that she suffered no injury in the Wishart accident. Further, she testified at the deposition that she suffered her neck injuries in the Spillman accident, so it would have been difficult to prove that the injuries had been caused by the Wishart accident. Additionally, liability was contested by Wishart and Ms. Prande had even testified that Wishart had the green arrow when he struck her car and that she had entered the intersection under a yellow light. This, coupled with the fact that there were no witnesses to support Ms. Prande's claim that Wishart had been negligent, left Ms. Prande with a weak case for liability. Finally, in contravention of her fee agreement, Ms. Prande refused to pay for either Dr. Nichols or Dr. Stopak to testify. In light of these facts, Shore felt that Ms. Prande's chances at trial were slim. Thus, he recommended the settlement, and after discussing his concerns with Ms. Prande, Shore believed he had obtained her consent over the telephone to accept the offer of $3,000. Shore communicated Ms. Prande's acceptance of the settlement to Wishart's attorneys, but Ms. Prande subsequently refused to accept the settlement offer.

Wishart then filed a Motion to Enforce Settlement Agreement. This motion was accompanied by an affidavit by Shore in which he stated that Ms. Prande had authorized him to accept the settlement offer on her behalf. By letter dated May 1, 1992, Shore informed Ms. Prande of the motion and advised her that a hearing on the motion had been scheduled for May 19, 1992 and that she should attend "in the event that you seek or wish to contest the matter of whether we had your authorization to accept a settlement. Please recall that you

---

wise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

did reconfirm with me in the presence of Mr. Bell that you had given us full authorization to settle the case for that figure." Notwithstanding Ms. Prande's receipt of this letter, she failed to appear at the hearing on May 19th to contest the Motion to Enforce Settlement Agreement. The Circuit Court for Montgomery County granted the motion and dismissed with prejudice Ms. Prande's lawsuit against Wishart.

In August of 1993, Ms. Prande was unable to pay her hospital and medical bills and filed for bankruptcy. She was also unable to pay for additional medical treatment, including the additional surgery that her surgeons had recommended. Ms. Prande then filed a legal malpractice action against appellees Bell and Shore on September 22, 1993, alleging, *inter alia,* that

during the course of their representation of plaintiff, ... defendants failed to exercise such reasonable and ordinary skill, care, and diligence as would be reasonably necessary to fulfill the objectives of their employment. Specifically, defendants: ... negligently advised plaintiff to accept unreasonable and inadequate settlements of her claims arising out of the April and September accidents....

An Amended Complaint was filed on February 8, 1994, wherein Frank Cornelius, a former member of the law firm, and the firm of Bell, Cornelius and Shore were added as defendants. Appellees Bell and Shore filed a motion for summary judgment on March 31, 1994, arguing that the doctrine of collateral estoppel barred Ms. Prande from relitigating the issue of whether she failed to receive an adequate settlement in the Wishart and Spillman claims. Appellee Cornelius also moved for summary judgment on collateral estoppel grounds, and argued additionally that Ms. Prande's claims against him were barred by the statute of limitations, since suit was filed against him more than four years after the date of the alleged malpractice. Further, Cornelius contended that he could not be held liable for any negligence resulting from the Wishart suit because he had withdrawn from the firm prior to the occurrence of any alleged negligence in that action.

On July 21, 1994, the parties presented oral argument on the summary judgment motions. Shore and Bell argued that the doctrine of nonmutual collateral estoppel prevented Ms. Prande from relitigating the value of her claim and the question of Shore's authority to settle the suit. Cornelius argued that the statute of limitations and his withdrawal from the firm barred suit against him. The circuit court granted all of the defendants' summary judgment motions, stating:

> For the reasons set forth and argued by the defendants and the case law as I understand it, I'm going to grant all the motions for summary judgment. I believe that the plaintiff knowingly and voluntarily agreed to settle her first case.

> She signed a release, dismissed her case, got the money, and in the second accident there was some dispute about it. She was offered an opportunity to appear in Court for a hearing. She choose [sic] not to appear.

> \* \* \* \* \* \*

> ... [S]he wants to relitigate the matters that have already been decided and resolved, and I agree that the principle of peril [sic] evidence does apply; otherwise, we would never have an end to litigation.

> People could just raise the issue of duress, and it would send our system into choas [sic]. So I think that her action was filed belatedly, and ... from the evidence and the file that's reflected here, she knew what she was doing at the time she was doing it.

This appeal followed.

## Nonmutual Collateral Estoppel

The first issue raised by appellant is whether the trial court erred in ruling that appellant was barred by the doctrine of collateral estoppel from suing her previous attorneys for legal malpractice in two personal injury cases. We hold that the trial court did err in finding that nonmutual collateral estoppel precluded appellant from suing her attorneys in this case.

■ The doctrine of nonmutual collateral estoppel has been discussed at length by the Court of Appeals in two cases: *Leeds Fed. Savings & Loan Ass'n v. Metcalf,* 332 Md. 107, 630 A.2d 245 (1993) and *Welsh v. Gerber Products, Inc.,* 315 Md. 510, 555 A.2d 486 (1989). Nonmutual collateral estoppel can be invoked either offensively or defensively. *Welsh,* 315 Md. at 517–18 n. 6, 555 A.2d 486. It is used defensively when a defendant seeks to prevent a plaintiff from relitigating an issue which the plaintiff previously litigated unsuccessfully in another action against a different party.[4] *Id.* In the case *sub judice,* appellees, lawyers being sued for malpractice, invoked the doctrine of nonmutual collateral estoppel defensively. They argued that, by settling the Spillman case and having a default judgment entered against her in the Wishart case, Ms. Prande is estopped from now claiming that she did not receive full compensation for the value of both claims and that she did not agree to the Wishart settlement or authorize Shore to accept it on her behalf.

■ Maryland law provides a four-part test for the application of the doctrine of nonmutual collateral estoppel:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Leeds,* 332 Md. at 117–18, 630 A.2d 245 (quoting *Washington Suburban Sanitary Comm'n v. TKU Assocs.,* 281 Md. 1, 18–19, 376 A.2d 505 (1977)). All four elements must be answered in the affirmative in order for nonmutual collateral estoppel to bar a subsequent claim. As the Court of Appeals noted in

---

4. Nonmutual collateral estoppel may be used offensively when a plaintiff attempts to bar a defendant from relitigating an issue that the defendant previously litigated unsuccessfully in another action against a different party. *Welsh,* 315 Md. at 517–18, n. 6, 555 A.2d 486. This is not how the doctrine was invoked in the instant case.

*Welsh,* 315 Md. at 517, 555 A.2d 486, "there are many situations where application of the doctrine of nonmutual collateral estoppel would be manifestly unfair."

There have been no cases in Maryland wherein a defendant in a legal malpractice action has sought to invoke the doctrine of nonmutual collateral estoppel defensively, although our research has uncovered such cases from other jurisdictions. These jurisdictions have addressed the issue of whether collateral estoppel bars a client from bringing action against former counsel for legal malpractice allegedly committed with respect to an underlying action when the client settled the underlying action with the original defendant. In *Cohen v. Lipsig,* 92 A.D.2d 536, 459 N.Y.S.2d 98 (1983), a New York intermediate appellate court held that a cause of action for legal malpractice was viable despite the plaintiff's settlement of the underlying action where the settlement was compelled because of mistakes made by plaintiff's former counsel.[5] *See also Titsworth v. Mondo,* 95 Misc.2d 233, 407 N.Y.S.2d 793, 797–98 (Sup.Ct. 1978) (holding that a client is not precluded from bringing a malpractice action even though the personal injury claims were settled and a general release was executed); *Becker v. Julien, Blitz & Schlesinger, P.C.,* 95 Misc.2d 64, 406 N.Y.S.2d 412, 413 (Sup.Ct.1977) (holding that a malpractice action brought against attorneys on theory that the settlement reached in the contract action was improvidently made due to attorneys' malpractice was not barred due to plaintiff's voluntary agreement to enter into stipulation of settlement).

---

**5.** In an earlier case, *N.A. Kerson Co., Inc. v. Shayne, Dachs, Weiss, Kolbrenner, Levy and Moe Levine,* 59 A.D.2d 551, 397 N.Y.S.2d 142, 143 (1977), this same New York court had held that clients could not base an action in legal malpractice upon alleged mistakes of counsel prior to settlement because their agreement to the terms of the settlement terminated the litigation. In a concurrence to that opinion, Judge Suossi explained that the "plaintiffs' action against the defendants for legal malpractice must stand or fall on its merits," but since the evidence did not establish even a prima facie case of malpractice, the action must fail. *Id.* 397 N.Y.S.2d at 144. The *Kerson* decision was affirmed on the grounds stated in the concurrence. *N.A. Kerson Co., Inc. v. Shayne, Dachs, Weiss, Kolbrenner, Levy and Moe Levine,* 45 N.Y.2d 730, 408 N.Y.S.2d 475, 476, 380 N.E.2d 302, 302 (1978).

In addition to the New York courts, other jurisdictions have also held that collateral estoppel is not a bar to a legal malpractice action against an attorney who handled an earlier settlement. In *Ziegelheim v. Apollo*, 128 N.J. 250, 607 A.2d 1298 (1992), the Supreme Court of New Jersey held that a dissatisfied litigant may recover from an attorney for malpractice in negotiating a settlement which the client has accepted, even in the absence of a showing of actual fraud. In *Ziegelheim*, the client voluntarily accepted a property settlement and later asserted that her attorney's advice was incompetent and she would not have accepted the settlement had she been advised competently. *Id.* 607 A.2d at 1301. The court held that the lawyer could not use the fact that the client knowingly accepted the settlement to collaterally estop her from pursuing the legal malpractice action. *Id.* 607 A.2d at 1305. Because "[t]he earlier ruling did not implicate the competence of counsel and, indeed, was premised on the presumptive competence of counsel[,] . . . defendant [could not] invoke that ruling now to bar a challenge to his competence." *Id.* 607 A.2d at 1306.

In *Lowman v. Karp*, 190 Mich.App. 448, 476 N.W.2d 428 (1991), the Court of Appeals of Michigan held that a plaintiff who signed a settlement agreement and release in an earlier action was not precluded from bringing a legal malpractice case in which she maintained that her attorney intimidated and coerced her into signing the settlement agreement. *Id.* 476 N.W.2d at 429. Similarly, in *Cook v. Connolly*, 366 N.W.2d 287, 289 (Minn.1985), a client sued her attorney for obtaining an inadequate personal injury settlement. The Supreme Court of Minnesota held that, even though the client settled her claim in the prior personal injury action, litigation of a legal malpractice suit against the attorney who represented her in that earlier action was not barred by collateral estoppel. *Id.* at 290. The court explained that the issue raised in the pending litigation was not the same issue that was adjudicated in the prior proceeding, and the party sought to be estopped did not have a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

The Supreme Court of Oregon also recognized that a release signed in a personal injury action did not preclude a plaintiff from pursuing a legal malpractice claim against the attorneys who represented her in that claim. *King v. Jones,* 258 Or. 468, 483 P.2d 815, 818 (1971). Courts in Alabama, Connecticut, Florida, Illinois, Louisiana, Massachusetts, and Missouri have also held that a client is not barred from pursuing a legal malpractice claim when the plaintiff settled the underlying claim. *See Grayson v. Wofsey, Rosen, Kweskin and Kuriansky,* 231 Conn. 168, 646 A.2d 195 (1994); *Baldridge v. Lacks,* 883 S.W.2d 947 (Mo.Ct.App.1994); *McCarthy v. Pedersen & Houpt,* 250 Ill.App.3d 166, 190 Ill.Dec. 228, 621 N.E.2d 97, *appeal denied,* 153 Ill.2d 561, 191 Ill.Dec. 621, 624 N.E.2d 809 (1993); *Bill Branch Chevrolet, Inc. v. Burnett,* 555 So.2d 455 (Fla.Dist.Ct.App.1990); *Braud v. New England Ins. Co.,* 534 So.2d 13 (La.Ct.App.1988); *Fishman v. Brooks,* 396 Mass. 643, 487 N.E.2d 1377 (1986); *Edmondson v. Dressman,* 469 So.2d 571 (Ala.1985).

The Supreme Court of Pennsylvania has held that a legal malpractice action was not barred by collateral estoppel even when the underlying action was settled, because the issue in the underlying action was whether the settlement had been authorized but the issue in the legal malpractice case was whether the attorneys were negligent and/or deceitful in their representation. *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 526 Pa. 541, 587 A.2d 1346, 1348, *reh'g denied,* 528 Pa. 345, 598 A.2d 27, *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). Thus, there were issues in the legal malpractice claim that were not litigated in the previous action. *Id.* Even though the action was not barred by collateral estoppel, because of the state's longstanding public policy encouraging settlements, the court held that a dissatisfied plaintiff could not sue his attorney for malpractice following a settlement to which the plaintiff agreed, unless the plaintiff could show that he was fraudulently induced to settle the original action. *Id.* That view has been expressly rejected by courts in Connecticut, Missouri, and New Jersey.

*Baldridge,* 883 S.W.2d at 952; *Grayson,* 646 A.2d at 199; *Ziegelheim,* 607 A.2d at 1304.

In *Irby v. Richardson,* 278 S.C. 484, 298 S.E.2d 452 (1982), the Supreme Court of South Carolina addressed the circumstances under which collateral estoppel bars a client from a subsequent legal malpractice suit. The court held that "[w]here the plaintiff has had a full and fair opportunity to litigate the question of an attorney's negligence or effectiveness in a particular case, he should be collaterally estopped to adjudicate the same issue in a subsequent legal malpractice action." *Id.* 298 S.E.2d at 454. In *Irby,* an earlier proceeding in family court resulted in Mrs. Irby being granted an absolute divorce, custody of the two children, and child support. *Id.* 298 S.E.2d at 453. The family court judge indicated that the parties had consented to the wife having custody of the children. *Id.* Mr. Irby obtained different counsel to file a motion and petition for a reopening of his child custody case, alleging that he did not understand that he had waived his right to contest the child custody issue when he did not contest the divorce. His petition was denied, the family court finding that appellant was aware that he had waived his right to contest the child custody issue. That order was upheld on appeal. Mr. Irby also petitioned the family court for custody of his children on seven other occasions, retaining at least six different attorneys and appearing before three different family court judges. All of these petitions were either denied or no order was issued.

Mr. Irby then filed a legal malpractice action, alleging that the attorney "willfully failed to prepare his case and forced him to settle a divorce proceeding in which his wife obtained custody of the[ir] two children and a child support award." *Id.* 298 S.E.2d at 453. The trial court granted summary judgment in the attorney's favor. The Supreme Court of South Carolina affirmed, having previously found that appellant voluntarily consented to the custody agreement and noting that the family court repeatedly held that his former wife was fit to be the custodial parent. *Id.* 298 S.E.2d

at 454. Furthermore, the court noted that the grievance committee dismissed Mr. Irby's charge that the attorney had negligently handled the domestic case. Thus, since Mr. Irby had previously litigated the essential issues involved in the case, he was collaterally estopped from relitigating them in his legal malpractice claim. This holding is not contrary to the holdings in the cases previously mentioned because in *Irby*, the court merely held that when a client has previously had the opportunity to litigate the issue of an attorney's negligence, he or she should be collaterally estopped from relitigating the issue in a legal malpractice claim. It follows, therefore, that where a client has not had the opportunity to litigate the issue of an attorney's negligence, collateral estoppel will not act as a bar to the action.

We agree with those jurisdictions that have held that collateral estoppel is not available as a defense in a legal malpractice action where the plaintiff settled the underlying claim and had no subsequent opportunity to litigate the claim that was settled or the result of the settlement. The reasoning given by the other courts is sound and is in concert with Maryland law on the application of the doctrine of nonmutual collateral estoppel. When a client sues a lawyer for malpractice resulting from the settlement of an earlier claim and the issue of the attorney's negligence was not decided in the earlier adjudication, the party claiming the malpractice has not been given a fair opportunity to be heard on the issue of the attorney's negligence. The first and fourth prongs of the test for applying the collateral estoppel doctrine are not met in that situation, and the doctrine cannot be applied.

In this case, Ms. Prande clearly did not have a full and fair opportunity to litigate the question of her attorneys' negligence. According to Ms. Prande, she was told she had no choice but to settle her claim against Spillman because she needed the money to prosecute her claim against Wishart. This is why, on the advice of counsel, she settled the Spillman case. Ms. Prande also testified that she was pressured to settle because the doctors would not testify that her injuries

resulted from the accident. When Ms. Prande executed the settlement agreement and signed the release in the Spillman case, she did not release her attorneys from any possible negligence claim. In the Wishart case, a default judgment was entered against Ms. Prande because she failed to attend the Motion to Enforce Settlement Agreement. Although Ms. [Prande] was offered the opportunity to contest her lawyer's authority to accept the settlement on her behalf at the motions hearing, she did not avail herself of this opportunity. Ms. Prande felt pressured into the Spillman settlement that she felt was unfair and she had a default judgment entered against her in settlement of the Wishart case. In neither case did she have a full and fair opportunity to adjudicate the issue of her attorneys' negligence.

Like the courts in Connecticut, Missouri, and New Jersey, we too reject the holding of the Pennsylvania Supreme Court in *Muhammad,* 587 A.2d at 1348, that a legal malpractice claim can be made out only if the plaintiff can show he or she was fraudulently induced to settle the original action. In *Muhammad,* 587 A.2d at 1349, the court explained:

> The primary reason we decide today to disallow negligence ... suits against lawyers after a settlement has been negotiated by the attorneys and accepted by the clients is that to allow them will create chaos in our civil litigation system. Lawyers would be reluctant to settle a case for fear some enterprising attorney representing a disgruntled client will find a way to sue them for something that 'could have been done, but was not.' We refuse to endorse a rule that will discourage settlements and increase substantially the number of legal malpractice cases. A longstanding principle of our courts has been to encourage settlements; we will not now act so as to discourage them.

In Maryland, we too have a longstanding policy to encourage settlements, but we reject the rule articulated by the Pennsylvania Supreme Court. The Supreme Court of Connecticut in *Grayson,* 646 A.2d at 199–200 explained the reason for rejecting such a rule:

'Although we encourage settlements, we recognize that litigants rely heavily on the professional advice of counsel when they decide whether to accept or reject offers of settlement, and we insist that the lawyers of our state advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks.' Therefore, when it has been established that an attorney, in advising a client concerning the settlement of an action has failed to 'exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the [legal] profession ... [and that conduct has] result[ed in] injury, loss, or damage to the [client,]' the client is entitled to a recovery against the attorney. Accordingly, like the majority of courts that have addressed this issue, we decline to adopt a rule that insulates attorneys from exposure to malpractice claims arising from their negligence in settled cases if the attorney's conduct has damaged the client.

(citations omitted) (alterations in original).

We agree. It would be patently unfair to allow attorneys who may have committed malpractice in handling a case to turn around and rely on a defense that effectively says that, because the client knowingly settled his or her case, the issue of whether the attorney was negligent was also settled. We do not think this resolution will discourage settlements or increase the volume of litigation. It is unlikely that attorneys will stop recommending settlements out of concern over possible malpractice suits, because settlements are still in the best interests of the clients. Furthermore, we do not expect a dramatic increase in legal malpractice claims by parties who are dissatisfied with the settlement agreements into which they entered, as we have not created a new claim or theory of recovery. Plaintiffs must still allege and prove all facts in support of their claims of attorney negligence and may not litigate complaints containing mere generalized assertions of

malpractice.[6]

We are mindful, however, of the concerns expressed by the Pennsylvania Supreme Court in *Muhammad*—that allowing legal malpractice claims after a settlement has been accepted by the clients could create chaos in the litigation system because lawyers might be reluctant to settle for fear of malpractice suits and the number of malpractice suits could increase substantially. *See* 587 A.2d at 1349. We recognize that this case is not typical of those generally considered as an action for legal malpractice. This is not a case in which an attorney has negligently permitted a statute of limitations to run or negligently failed to research and find a point of law that would have determined the outcome of a case in favor of his client. This is not a case in which an attorney should have objected to the admissibility of evidence, but did not, or failed to object to an instruction, but did not. It is not a case in which an attorney searching a title missed a mortgage or a judgment in the chain of title. Simply put, this kind of legal

---

**6.** Traditionally, in the professional malpractice context, a cause of action is brought against an attorney based on negligence. *Flaherty v. Weinberg*, 303 Md. 116, 134, 492 A.2d 618 (1985). When such a claim is asserted, a plaintiff must prove: "(1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) loss to the client proximately caused by that neglect of duty." *Hooper v. Gill*, 79 Md.App. 437, 440–41, 557 A.2d 1349, *cert. denied*, 317 Md. 510, 564 A.2d 1182 (1989), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2588, 110 L.Ed.2d 269 (1990) (quoting *Flaherty*, 303 Md. at 128, 492 A.2d 618).

In addition to negligence, a cause of action for negligent misrepresentation may be also be asserted against an attorney for legal malpractice. The principal elements of a negligent misrepresentation claim are as follows:

(1) The defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) The defendant intends that his statement will be acted upon by the plaintiff;

(3) The defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) The plaintiff, justifiably, takes action in reliance on the statement; and

(5) The plaintiff suffers damage proximately caused by the defendant's negligence.

*Flaherty*, 303 Md. at 135, 492 A.2d 618 (quoting *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 337, 439 A.2d 534 (1982)).

malpractice involves a judgment call; there exists no bright line by which to assess malpractice. Before recommending that a client settle, or not settle, a claim, either before or after suit is filed, the lawyer must have, at a minimum, an adequate appreciation of (1) the relevant facts, (2) the potential strengths and weaknesses of the client's case as it then stands and as it might possibly be developed, (3) the likely costs, both monetary and psychological, of proceeding further with litigation, and (4) what the outcome is likely to be if the case proceeds further, based not only on the relevant law but also on what triers of fact in the community are doing in similar kinds of cases. Like the ultimate judgment call itself, these elements are mostly subjective in nature, not easy to quantify. They necessarily invoke the lawyer's overall knowledge and experience, which obviously differ from one lawyer to another, and thus, unlike some of the other contexts in which malpractice is alleged, there will, of necessity, be a range for honest differences of opinion in making settlement recommendations. A recommendation to settle or not to settle on particular terms is not malpractice simply because another lawyer, or even many other lawyers, would not have made the same recommendation under the alleged circumstances.

In order to guard against the concerns expressed in *Muhammad*, we hold that in order to state a cause of action for legal malpractice based on a recommendation that a case be, or not be, settled, the plaintiff must specifically allege that the attorney's recommendation in regard to settlement was one that no reasonable attorney, having undertaken a reasonable investigation into the facts and law as would be appropriate under the circumstances, and with knowledge of the same facts, would have made.

Thus, if a client properly alleges in his or her complaint those facts that would normally be testified to by an expert witness, that is, that the attorney's recommendation of settlement is one that no reasonable attorney, having undertaken a reasonable investigation into the facts and law as would be appropriate under the circumstances, with knowledge of the

same facts, would have recommended, and the client can establish that the settlement he or she entered into was a product of that attorney's negligence as described above, the client will not be barred from recovering against that attorney for malpractice. Because this is a case of first impression, Mrs. Prande should be granted leave to amend the complaint if necessary.

### Liability of Partner Cornelius

Appellant makes two arguments with respect to the liability of Cornelius, a former partner in the firm of Bell, Shore and Cornelius. First, she argues that the trial court erred in ruling that Cornelius could not be held liable for his partner's negligence simply because he withdrew from the partnership after one incident of alleged negligence but before the second incident. Second, appellant contends that the trial court erred in finding that her complaint against Cornelius was barred by the statute of limitations.

The trial court made the following finding with respect to Ms. Prande's case against Cornelius:

[Ms. Prande] now wants to try to set [the settlements] aside, and in addition to that[,] she subsequently or after her original complaint filed suit against Mr. Cornelius.

For the reasons he put forth in addition to the ones already stated, that is that the statute of limitations does apply, and I agree it does apply to him, and he—he wasn't even part of the firm at the time [ ] this alleged malpractice took place.

He should never have been a defendant in this case as far as I'm concerned, but he was, and that's another matter.

Appellant concedes that Cornelius is not liable for any negligence in the settlement of the Wishart claim because it occurred after the date of his withdrawal from the firm, but she argues that he is liable for any negligence in settling the Spillman case in 1990. Cornelius does not contest that he would be responsible for negligence committed by the firm prior to his withdrawal; however, he claims that Ms. Prande's

claim against him for the Spillman settlement was time-barred. Appellant disagrees, arguing that her Amended Complaint adding Cornelius was filed within three years of the date on which she discovered the basis for her cause of action, and therefore, is not barred by the statute of limitations. The court's finding to the contrary, she argues, was error.

Since all parties are in agreement that Cornelius is not liable for any negligence in connection with the Wishart settlement due to his withdrawal from the firm prior to the alleged negligence, we need only address the negligence of Cornelius with respect to the Spillman claim. Under partnership law, Cornelius would be jointly and severally liable for any wrongful acts committed by any partner while Cornelius was part of the partnership, provided those acts are chargeable to the partnership. Md.Code Ann., Corps. and Ass'n § 9–307 (1994 Supp.). Cornelius cannot be held liable, however, if Ms. Prande's claim against him was not filed within the statute of limitations. We hold that whether Ms. Prande's claim was filed within the statute of limitations is a question of fact for the jury and therefore, the trial court erred in granting summary judgment on this issue.

In general, there is a three-year limitation in which a civil action must be filed. Md.Code Ann., Cts. & Jud.Proc. § 5–101 (1994 Supp.). Under the discovery rule, however, "the statute of limitations will begin to run when the plaintiff has 'knowledge of circumstances which would cause a reasonable person in the position of the plaintiff[ ] to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [tort].'" *Pennwalt Corp. v. Nasios,* 314 Md. 433, 448–49, 550 A.2d 1155 (1988) (quoting *O'Hara v. Kovens,* 305 Md. 280, 302, 503 A.2d 1313 (1986)). The discovery rule has been applied to legal malpractice actions. *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969).

Appellant contends that the discovery rule applies to her case and that she properly filed her claim against Cornelius within three years after she discovered that she had a legal

malpractice claim. Although the Spillman claim was settled on September 24, 1990, Ms. Prande did not file suit against Cornelius until February 7, 1994. Ms. Prande claims that she did not become aware of her cause of action against the firm until 1992, when Shore recommended she settle the Wishart case and after she had consulted with another attorney.[7]

When a plaintiff invokes the discovery rule, the time at which the plaintiff became aware of his or her cause of action becomes the ultimate issue to be determined. The question of whether a plaintiff was on notice of a cause of action is a question of fact. *O'Hara v. Kovens*, 305 Md. 280, 295, 503 A.2d 1313 (1986). "[Q]uestions of fact on which a limitations defense will turn are to be decided by the jury or, when sitting as a jury, by the court." *Id.* at 301, 503 A.2d 1313.

In the instant case, the trial court granted Cornelius's motion for summary judgment, thereby making a finding either that the discovery rule was inapplicable under the facts of this case or that, if applicable, she had knowledge of her cause of action when she settled the Spillman case and that Ms. Prande did not file suit against Cornelius within the applicable statute of limitations. If an issue of fact remained with respect to when Ms. Prande knew of her action against Cornelius, the grant of summary judgment would be clearly erroneous.

In her deposition, Ms. Prande indicated that she felt coerced or forced into settling the Spillman case:

---

7. In Ms. Prande's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment, she attached an affidavit in which she stated:

[W]hen I executed the release dated September 26, 1990, in the case of *Prande v. Spillman*, Civil Action No. 46234, Circuit Court for Montgomery County, I had no reason to believe that I had a claim against John T. Bell, Elbert R. Shore, Frank S. Cornelius or the firm of Bell, Cornelius & Shore for legal malpractice in the Spillman matter. It was not until Mr. Shore told me that I had no choice but to settle another claim, involving Lance J. Wishart, for $3,000.00, and I discussed that matter with another attorney, that I began to realize that my attorneys may have been negligent in the Spillman case.

Q. Are you claiming in this case that the settlement of your claims against Miss Spillman was something that you did somehow under duress?

A. Yes.

Q. Why are you making that claim? What is the basis for that statement?

A. I did not understand how a case could be settled when there were so many problems still with me.

Q. When you say so many problems, what are you talking about?

A. My neck and back problems.

\* \* \* \* \* \*

Q. Did you discuss that subject with your lawyers?

A. Yes.

Q. Are you saying that you were forced into that settlement?

A. Yes.

Q. Tell me how you were forced into it.

A. I was going by the advice of counsel that my case was not going all that well because of the testimony of the doctors.

Q. What specifically did your attorneys tell you that you say forced you into the settlement?

A. My attorneys told me that I did not have any choice, that I will have to take that money in order for use to go on with the second case.

Q. Who told you that?

A. Mr. Shore.

\* \* \* \* \* \*

Q. Specifically what else were you told that you say forced you into the settlement?

A. Again, that the ... doctor was not sure which accident caused my problems, and that it is best—in my best interests for me to settle for this amount.

She expounded on this further in an affidavit, stating:

That it was also not my intent, in signing the release, to indicate that the $7,500 settlement I received represented a full recovery of my damages from the Spillman accident. Rather, it was a compromise which I very reluctantly agreed to based upon my attorney's telling me that the case was weak, because of my doctors' inability to attribute my injuries to the Spillman accident, *and that I could recover my uncompensated damages in the Wishart litigation.*

(Emphasis added).

The import of this is that, when presented with the offer in the Spillman case, appellant believed that $7,500 was not adequate in light of her injuries and that she was persuaded to accept the offer because of her attorney's (1) concern about her ability to prevail in that case, and (2) assertion that she could recover the true measure of damages, and thus achieve full compensation, in the Wishart case. According to her, the harm she suffered in accepting her lawyer's advice to settle the Spillman case did not become apparent until her attorney informed her that the Wishart case was not worth more than $3,000. She stated in her affidavit that she was unaware of any possible malpractice claim until 1992, when she consulted with another lawyer. There is clearly a question of fact to be resolved, that is, whether Ms. Prande knew or had knowledge in 1990, when she settled the Spillman case, of "circumstances which would cause a reasonable person" in her position to "undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge" of the alleged legal malpractice. *Pennwalt Corp.*, 314 Md. at 448–49, 550 A.2d 1155. Because the jury is responsible for making findings of fact, the court erred in granting summary judgment on this issue.

JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR

FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE.