718 A.2d 1187 (1998)
351 Md. 1187
David THOMAS
v.
Marsharina BETHEA.
No. 7, Sept. Term, 1998.
Court of Appeals of Maryland.
October 9, 1998.
*1188 S. Todd Willson (Jeffrey W. Bredeck, Eccleston and Wolf, on brief), Baltimore, for petitioner.
Saul E. Kerpelman, Baltimore, for respondent.
Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.
WILNER, Judge.
In Prande v. Bell, 105 Md.App. 636, 656, 660 A.2d 1055, 1065 (1995), the Court of Special Appeals held that an attorney may be liable for professional malpractice for recommending that a client's case be, or not be, settled on particular terms if "the attorney's recommendation in regard to settlement was one that no reasonable attorney, having undertaken a reasonable investigation into the facts and law as would be appropriate under the circumstances, and with knowledge of the same facts, would have made." Applying Prande v. Bell, the appellate court in this case reversed a judgment N.O.V. entered by the Circuit Court for Baltimore City and reinstated a $125,000 judgment entered against an attorney upon a jury verdict. We granted certiorari to review that decision and shall affirm it.

BACKGROUND
Like most cases tried on their merits, some of the relevant facts in this action were in dispute. Because what is before us is the appropriateness of a judgment N.O.V., overturning the effect of a jury verdict in favor of the plaintiffs, we must view the evidence and the permissible inferences from that evidence in a light most favorable to the plaintiffs. Impala Platinum v. Impala Sales, 283 Md. 296, 389 A.2d 887 (1978); Houston v. Safeway, 346 Md. 503, 697 A.2d 851 (1997). The principal issues before us, however, are essentially legal, rather than factual, ones.
In August, 1981, petitioner, David Thomas, commenced representation of the respondents, Marsharina Bethea (a minor) and her mother, Gerrine Bethea,[1] in a lead paint poisoning case. Eventually, suit was filed in the Circuit Court for Baltimore City against three landlordsthe owners of 209 East Lafayette Avenue, 1322 Myrtle Avenue, and 1217 East Preston Street, each of whom was alleged to be responsible for the elevated level of lead in Marsharina's blood. The owners of the first two properties were served; Thomas was unable to effect service on the owner of the Preston Street property, however. In December, 1983, Thomas received an offer of settlement from the two served defendants in the amount of $2,500, but the offer was conditioned on a general release of all three defendants. Allegedly upon Thomas's recommendation, Gerrine Bethea, on behalf of herself and Marsharina, accepted the settlement offer and executed the releases demanded by the settling defendants.
In March, 1995, nearly 12 years after accepting the settlement, Marsharina filed this lawsuit against Thomas in the Circuit Court for Baltimore City, alleging that, as a result *1189 of Thomas's failure to properly investigate, prosecute, and litigate her claim and his recommendation to Gerrine that she accept a settlement that was "grossly inadequate to cover the damages," Gerrine accepted the $2,500 settlement. Following the decision in Prande v. Bell, supra, Marsharina amended her complaint to add the allegation that Thomas's recommendation to settle "was one that no reasonable attorney, having undertaken a reasonable investigation of the facts and law as would be appropriate under the circumstances, and with the knowledge of the same facts, would have made." The essence of her case, as it was presented at trial, was Thomas's recommendation that the Betheas accede to a release of the unserved owner of 1217 East Preston Street, W.H. Groscup & Sons, Inc., as a condition of the $2,500 settlement. Although her expert witness testified to the inadequacy generally of the $2,500 settlement, Marsharina later stipulated that the alleged breach of the standard of care by Thomas concerned only the settlement with respect to Groscup. With that stipulation, her contention was not that $2,500 was an unreasonable consideration for releasing the owners of the other two properties, but rather that a valuable case against Groscup was surrendered for no compensation at all.
In that regard, Marsharina presented evidence that Gerinne advised Groscup, before entering into the lease, that Marsharina had an elevated lead level, that Groscup informed her that the apartment was free of lead paint, that there was, in fact, flaking or peeling lead paint there, and that there was $300,000 of insurance on the property. Her expert witness, C. Christopher Brown, Esq., opined that "the settlement that was entered into by Mr. Thomas was woefully inadequate in terms of what the fair amount, reasonable amount would have been in light of the facts of the case and the law applicable to the case; and that as a consequence no reasonable attorney should have entered into such a settlement." Mr. Brown stated that a reasonable lawyer might settle for such a small amount if the landlord had no assets or threatened bankruptcy, or if the client herself was in some way irresponsible, but that neither those factors nor any similar ones were present in this case. His view was that Marsharina had a "strong case" which "should not merely be settled for $2500, but a case which should be off to a trial for however much the jury determines is an appropriate sum."[2] No evidence was produced by the plaintiff as to what a reasonable settlement amount would have been in 1983 or what a likely verdict would have been had the case proceeded to trial. It was, instead, left to the malpractice case jury to determine what kind of verdict would have been returned had the lead paint poisoning case against Groscup been tried on its merits.
At the conclusion of trial, the court submitted a number of specific issues for the jury to resolve. In response to the questions posed, the jury determined that (1) Groscup was negligent in regard to the presence of a lead paint hazard; (2) the presence of that hazard was a substantial factor in causing injury to Marsharina; (3) Thomas's recommendation in regard to the settlement of Marsharina's lead paint poisoning case was one that no reasonable attorney would have made; (4) the amount that a reasonable attorney would have recommended to Gerrine for Marsharina's claims was $25,000; and (5) Marsharina sustained $125,000 in damages as a result of her exposure to lead paint at 1217 East Preston Street. Upon those special verdicts, judgment was initially entered in favor of Marsharina in the amount of $125,000. That judgment was soon vacated, however. Concluding that the proper measure of damages, assuming liability, would have been the amount of a reasonable settlement with Groscup in 1983, and not the value of Marsharina's claim against that defendant, and finding that there was no evidence as to what a reasonable settlement would have been, the court granted Thomas's motion for judgment N.O.V. and entered judgment in his favor.
*1190 In an unreported Opinion, the Court of Special Appeals, applying its decision in Prande v. Bell, reversed the judgment N.O.V. and reinstated the $125,000 judgment entered on the jury's verdict. It concluded that, in the case before it, evidence of the fair settlement value was unnecessary. Citing RONALD E. MALLEN AND JEFFREY M. SMITH, LEGAL MALPRACTICE, § 32.11, at 190, 4th ed. (1996), the appellate court held that "[w]here the issue concerns the value of a lost cause of action, both the amount of the probable judgment and its collectibility are for the jury to decide ... and the jury decided that the amount of the probable judgment was $125.000." Bethea v. Thomas, No. 367, Slip op. at 5, 118 Md.App. 710 (Md.Ct.Spec.App. November 13, 1997).

DISCUSSION

A. Attorney's Liability For Negligently Recommending Settlement

Prande v. Bell arose out of the settlement of two motor vehicle tort claims. In April, 1984, Ms. Prande was involved in an accident with Susan Spillman. Claiming that the accident was entirely Spillman's fault and that she sustained permanent injuries as a result, Prande retained Bell and his firm to file a claim against Spillman.[3] Five months later, in September, 1988, Ms. Prande was involved in another accident, this time with Lance Wishart. Contending that the accident was Wishart's fault and that it exacerbated the injuries she had sustained in the Spillman collision, she employed Bell and his firm to file a claim against Wishart. Eventually, suits were filed against Spillman and Wishart.
The Spillman case was the first to be scheduled for trial. Prior to the September, 1990 trial date, upon Bell's recommendation, Prande settled that case for $7,500. In March, 1992, again upon Bell's recommendation, Prande agreed to settle the Wishart suit for $3,000. When she later reneged on the Wishart agreement, the settlement was enforced, and Prande then sued Bell for malpractice for having recommended the two settlements. The Circuit Court granted summary judgment to the defendants on the ground of non-mutual collateral estoppelthat, by agreeing to the settlements with the tort defendants, she was precluded from relitigating those claims against her attorneys.
The Court of Special Appeals concluded that a release signed in the underlying tort action did not preclude a lawsuit against the attorney for having negligently recommended the settlement if the question of the attorney's negligence was not decided in the tort action. It held that "[w]hen a client sues a lawyer for malpractice resulting from the settlement of an earlier claim and the issue of the attorney's negligence was not decided in the earlier adjudication, the party claiming the malpractice has not been given a fair opportunity to be heard on the issue of the attorney's negligence." Prande, 105 Md.App. at 652, 660 A.2d at 1063. As a matter of public policy, the court continued, "[i]t would be patently unfair to allow attorneys who may have committed malpractice in handling a case to turn around and rely on a defense that effectively says that, because the client knowingly settled his or her case, the issue of whether the attorney was negligent was also settled." Id. at 654, 660 A.2d at 1064. Mindful, however, of the fact that, unlike other failings that have been held to constitute malpracticemissing a statute of limitations, failure to do adequate research and preparation, missing a deed, mortgage, or judgment in searching a title, for examplerecommendations as to settlement involve judgment calls, for which there are no bright lines, the court concluded that there was a range for honest differences of opinion in making settlement recommendations, and that, accordingly, "[a] recommendation to settle or not to settle on particular terms is not malpractice simply because another lawyer, or even many other lawyers, would not have made the same recommendation under the alleged circumstances." Id. at 656, 660 A.2d at 1065.
In line with that view, the court adopted the heightened standard for judging malpractice in this context that we previously mentioned: *1191 there is no malpractice unless "the attorney's recommendation in regard to settlement was one that no reasonable attorney, having undertaken a reasonable investigation into the facts and law as would be appropriate under the circumstances, and with knowledge of the same facts, would have made." Id.
Prande v. Bell is not a unique case. More than a dozen States have dealt with the question of whether, and under what circumstances, a client who settles a dispute on terms that the client later determines were unreasonably disadvantageous, may sue his or her lawyer for having negligently recommended the settlement. The great majority of those States have reached conclusions consistent with those reached in Prande v. Bell, except that they have applied general, not heightened, negligence standards in doing so.
The cases present a number of issues. One, which predominated the discussion in Prande v. Bell, is whether non-mutual collateral estoppel bars a client who has settled an underlying dispute from later suing his or her attorney for advice given in connection with the settlementwhether the giving of a release and the acceptance of the settlement proceeds precludes the client from later litigating the fairness or value of the settlement in an action against the lawyer. Nearly all courts in which that defense has been raised have rejected it, for much the same reason it was rejected in Prande. The malpractice suit does not constitute a collateral attack on the settlement itself (or any judgment entered pursuant to it), which remain unaffected by a verdict for or against the attorney. The issue in the second case is the attorney's negligence, which, ordinarily, was neither raised nor resolved in the action that was settled. Even courts that disagree sharply on whether, as a matter of public policy, a malpractice suit should lie for negligence in recommending a settlement agree that collateral estoppel is no bar to such an action. See Muhammad v. Strassburger, et al., 526 Pa. 541, 587 A.2d 1346 (1991); Ziegelheim v. Apollo, 128 N.J. 250, 607 A.2d 1298 (1992); Baldridge v. Lacks, 883 S.W.2d 947 (Mo.App.1994); Cook v. Connolly, 366 N.W.2d 287 (Minn.1985).
A second, more substantive, issue arises from the premise, recognized in Prande, that a recommendation as to settlement of a dispute in, or susceptible to, litigation is a subjective judgment call and posits whether a lawyer should later be called to account for the exercise of that judgment. This issue embodies the concern that the allowance of such an action for negligently recommending a settlement may have the undesirable effect of chilling settlements, prolonging litigation, and encouraging frivolous malpractice suits by former clients who settle their dispute and later decide that the settlement was, in some way, unfair. Defendants have urged that lawyers will become reluctant to negotiate and recommend settlements, which the law encourages and the judicial system depends upon, if they face the prospect of later being sued for having made the recommendation. As we shall see, the great majority of courts, though acknowledging those concerns, have not allowed them to override the application of well-established principles of tort law. Like the Court of Special Appeals in Prande v. Bell, they have treated the negotiation and recommendation of settlements much the same as other legal work done by an attorney and have concluded that a lawyer may be held liable, at least under some circumstances, if the recommendation is the product of professional negligence and the client can prove harm.
These kinds of cases have tended to fall into two categories, although they sometimes contain features of both. One category involves situations in which the client claims that he or she was given little choice but to settle on disadvantageous terms because the lawyer failed in some other respect to prepare or prosecute the case properly, thereby diminishing the prospect of success if the litigation continued. The gravamen of the action in those situations is not so much that the lawyer negligently recommended a settlement that was unreasonably low, but that what otherwise would be an unreasonably low settlement was essentially forced on the client because of other deficiencies by the lawyer. If the client was aware of those deficiencies prior to settling, the settlement itself, given the circumstances then faced by the client, may not have been unreasonable at all, and, indeed, may have been entirely prudent. The question still is raised of *1192 whether, by agreeing to the settlement, the client should be barred from litigating its fairness in a suit against the lawyer, and the answer appears to be "no." See, for example, Fishman v. Brooks, 396 Mass. 643, 487 N.E.2d 1377 (1986); Cohen v. Lipsig, 92 A.D.2d 536, 459 N.Y.S.2d 98 (1983); Schaefer v. Manfredi, 156 A.D.2d 552, 549 N.Y.S.2d 59 (1989); Lowman v. Karp, 190 Mich.App. 448, 476 N.W.2d 428 (1991); Brooks v. Brennan, 255 Ill.App.3d 260, 193 Ill.Dec. 67, 625 N.E.2d 1188 (1994). See also Central Cab Co. v. Clarke, 259 Md. 542, 270 A.2d 662 (1970), where we held that a malpractice action against an attorney based on neglect was not barred by the fact that the client had settled the underlying case.
Cases in the second category focus more on the settlement itself, although they are often grounded, to some extent, on the attorney's failure to know the relevant facts or law or to appreciate the real value of the case. A common complaint in this category is that the lawyer's settlement recommendation was flawed because, as the result of a deficient investigation, the lawyer significantly undervalued the client's case and thus made a settlement recommendation that bore no reasonable relationship to what likely would have resulted had the litigation been pursued. In that setting, it is not that the client was knowingly forced to settle for less than the case was worth, as much as the client having been misinformed as to what the case was, in fact, worth.[4] Occasionally, the complaint is made that the settlement was recommended by the lawyer in order to cover up some other act of malpractice that prejudiced the case and that might have been revealed if the litigation proceeded.
In any of these situations, allowance of the lawsuit presents a number of subsidiary issues with which courts have had to wrestle. There may be a question of limitations, although not presented here with respect to Marsharina. There is nearly always a question of the measure of damages, and with it debates over the standards to be applied and the nature of the proof required. Assuming liability, is the measure of damages what the plaintiff likely would have obtained had the case proceeded to trial or other adjudication, or is it what a reasonable settlement would have been (assuming that the case could have been settled on terms other than it was), and, in either event, are such damages reasonably calculable or are they too speculative? If they are calculable, who makes the calculation, and upon what evidence? If the measure is what a reasonable settlement would have been, is expert testimony necessary to establish that amount? If the measure is what a judge or jury would have done had the case proceeded to adjudication, is expert testimony necessary to establish that result or does the trier of fact in the malpractice case make that determination by essentially trying a case within a case? These, and other, questions are daunting, but they have not proved insurmountable.
A few courts have declined to permit an action against an attorney based on negligence in recommending a settlement. The case most often cited for that approach is the decision of the Pennsylvania Supreme Court in Muhammad v. Strassburger, et al., supra, 526 Pa. 541, 587 A.2d 1346. The plaintiffs there employed the defendant law firm to represent them in a medical malpractice action against two physicians and a hospital allegedly responsible for the death of their infant son following surgery. Suit was filed against the doctors and the hospital. Following discovery, the defendants offered $23,000 in settlement, which the plaintiffs said they would accept. At a pre-trial conference, that amount was increased to $26,500 at the court's suggestion. Prior to actual payment, the plaintiffs changed their mind, but the court, finding that the $26,500 had been agreed to, upheld the settlement. After an unsuccessful appeal, the plaintiffs sued their lawyers for fraudulent misrepresentation, fraudulent concealment, non-disclosure, *1193 breach of contract, negligence, and outrageous conduct. The court's opinion does not reveal the details of any of those counts. The trial court dismissed the action as barred by collateral estoppel. The intermediate appellate court reversed that determination.
The Pennsylvania Supreme Court agreed that the action was not barred by collateral estoppel, but refused to countenance it on public policy grounds. Concerned that permitting such an action would violate "our strong and historical public policy of encouraging settlements" (id. at 1349), the court declared that a lawyer could not be held liable for simple negligence in recommending a settlement, but that liability could attach only if the settlement was procured by fraud:
"Simply stated, we will not permit a suit to be filed by a dissatisfied plaintiff against his attorney following a settlement to which that plaintiff agreed, unless that plaintiff can show he was fraudulently induced to settle the original action. An action should not lie against an attorney for malpractice based on negligence and/or contract principles when that client has agreed to a settlement. Rather, only cases of fraud should be actionable."
Id. at 1348.
The court appeared to limit the right of action, even when based on fraud, to where "the lawyer knowingly commits malpractice, but does not disclose the error and convinces the client to settle so as to avoid the discovery of such error...." Id. at 1351 (emphasis added). Although the plaintiffs in Muhammad had, indeed, charged the lawyers with fraudulent concealment, the court held that the allegations were "mere suppositions" and otherwise insufficient to state a cause of action. The two dissenters complained that the majority had just declared a "lawyer's holiday."
The Muhammad decision represents a distinct minority view. It is not only inconsistent with most of the cases decided prior to its rendition, none of which are even mentioned in the opinion, but it has been expressly rejected by all of the courts that have had the benefit of considering it. Perhaps the earliest repudiation came from the New Jersey Supreme Court in Ziegelheim v. Apollo, supra, 128 N.J. 250, 607 A.2d 1298. The plaintiff there sued the lawyer who had represented her in her divorce action for advising her to settle for far less than she likely would have obtained from the court. Evidence showed that the lawyer not only failed to discover significant assets of the plaintiff's husband but advised her that she could expect to get only 10% to 20% of the marital estate when, given the state of her health, the gross disparity in earning capacities, and the high standard of living the couple enjoyed during their marriage, she could have expected an award of about 50%. The trial court entered summary judgment for the lawyer, which the New Jersey Supreme Court reversed. Rejecting the Pennsylvania approach, urged by the defendant, the court noted, at 1304:
"Although we encourage settlements, we recognize that litigants rely heavily on the professional advice of counsel when they decide whether to accept or reject offers of settlement, and we insist that the lawyers of our state advise clients with respect to settlements with the same skill, knowledge, and diligence with which they pursue all other legal tasks."
In that regard, the court added that "[a]fter all, the negotiation of settlements is one of the most basic and most frequently undertaken tasks that lawyers perform." Id. The court did not expect its decision to "open the door to malpractice suits by any and every dissatisfied party to a settlement" for plaintiffs "must allege particular facts in support of their claims of attorney incompetence and may not litigate complaints containing mere generalized assertions of malpractice." Id. at 1306. It made clear that attorneys will not be held liable simply because they are unable to persuade their adversary to accept particular terms or because their strategies prove unsuccessful. The law, it said, demands only that attorneys handle their cases with knowledge, skill, and diligence, not that they be infallible or always secure optimum results for their clients.
In Grayson v. Wofsey, Rosen, Kweskin and Kuriansky, 231 Conn. 168, 646 A.2d 195 (1994), the Connecticut Supreme Court also rejected Muhammad. As in Ziegelheim, the plaintiff in Grayson sued the attorneys who had represented her in her divorce action for *1194 failing to prepare her case properly, as a result of which she agreed to a settlement that she claimed was not reflective of her legal entitlement. Evidence was presented that the lawyers had failed to discover and evaluate significant assets and income of the husband and that, based on the true value of the marital estate and the husband's actual income, she could have expected to receive through a court judgment $1,000,000 more in property distribution and $35,000 more in alimony than she was entitled to receive under the settlement recommended by the lawyers. In her subsequent malpractice action, the jury awarded damages of $1,500,000, which the Connecticut Supreme Court affirmed. Though expressing the same preference for settlements as the Pennsylvania court, the Connecticut court declined the defendants' invitation "to adopt a rule that promotes the finality of settlements and judgments at the expense of a client who, in reasonable reliance on the advice of his or her attorney, agrees to a settlement only to discover that the attorney had failed to exercise the degree of skill and learning required of attorneys in the circumstances." Id. at 199. Aligning itself with what it regarded as "the majority of courts that have addressed this issue," it expressly declined "to adopt a rule that insulates attorneys from exposure to malpractice claims arising from their negligence in settled cases if the attorney's conduct has damaged the client." Id. Like the New Jersey court, the Connecticut court did not expect its ruling to impede settlements or increase litigation in general or malpractice cases in particular. Rejection of Muhammad also appears in McWhirt v. Heavey, 250 Neb. 536, 550 N.W.2d 327 (1996); Malfabon v. Garcia, 111 Nev. 793, 898 P.2d 107 (1995); and Baldridge v. Lacks, supra, 883 S.W.2d 947 (Mo.App.1994). The Missouri court was the most explicit:
"Defendants ask this court to adopt the Pennsylvania view as set forth in Muhammad. The language in that case, however, goes well beyond the proposition that settled cases should not be readily revisited. In essence, defendants ask us to grant attorneys immunity from civil liability in cases where their clients have settled, absent some affirmative misrepresentation or fraud by the attorney. We do not believe it would serve the interests of justice to do so. Accordingly, we refuse to adopt a `bright line' rule that protects attorneys from liability where a plaintiff has made a submissible case of negligence."
Baldridge, 883 S.W.2d at 952.
The principle that a lawyer may be held liable for negligence in the handling of a case that was ultimately settled by the client, whether based on deficiencies in preparation that prejudiced the case and more or less required a settlement or on a negligent evaluation of the client's case, has been accepted by nearly every court that has faced the issue. In addition to the cases cited above, see Edmondson v. Dressman, 469 So.2d 571 (Ala.1985); Callahan v. Clark, 321 Ark. 376, 901 S.W.2d 842 (1995); Bill Branch Chev. v. Philip L. Burnett, 555 So.2d 455 (Fla.Dist.Ct.App.1990); McCarthy v. Pedersen & Houpt, 250 Ill.App.3d 166, 190 Ill.Dec. 228, 621 N.E.2d 97 (1993); Braud v. New England Ins. Co., 534 So.2d 13 (La.Ct.App.1988); Fishman v. Brooks, supra, 396 Mass. 643, 487 N.E.2d 1377 (1986); Lowman v. Karp, supra, 190 Mich.App. 448, 476 N.W.2d 428; Cook v. Connolly, 366 N.W.2d 287 (Minn.1985); Bruning v. Law Offices of Palagi, P.C., 250 Neb. 677, 551 N.W.2d 266 (1996); Malfabon v. Garcia, supra, 111 Nev. 793, 898 P.2d 107; Rodriguez v. Horton, 95 N.M. 356, 622 P.2d 261 (App.1980); Becker v. Julien, Blitz & Schlesinger, 95 Misc.2d 64, 406 N.Y.S.2d 412 (Sup.1977);[5]DePugh v. Sladoje, *1195 111 Ohio App.3d 675, 676 N.E.2d 1231, 1239 (1996); Crowley v. Harvey & Battey, 327 S.C. 68, 488 S.E.2d 334 (1997); Helmbrecht v. St. Paul Ins. Co., 122 Wis.2d 94, 362 N.W.2d 118 (1985); Hipwell By and Through Jensen v. Sharp, 858 P.2d 987 (Utah 1993).
In Flaherty v. Weinberg, 303 Md. 116, 128, 492 A.2d 618, 624 (1985), we confirmed that a former client may have an action against a lawyer if the client can prove (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) loss to the client proximately caused by that neglect of duty. There is nothing extraordinary about applying that principle to an attorney's recommendation regarding the settlement of a dispute in, or susceptible to, litigation. Absent an explicit instruction by the client to the contrary, exploring, and, indeed, developing and encouraging settlement opportunities have always been regarded as within the scope of an attorney's representation, and they are especially so today, as the courts struggle to handle efficiently the increasing burdens placed upon them. Statistics show that the vast majorityupwards of 90% or moreof the civil actions filed in Maryland and throughout the country settle without adjudication. Settlement is the most common end and is often the principal objective of litigation. There can be little doubt that clients routinely anticipate that their cases will be settled and that they rely heavily on their lawyer's recommendation regarding settlement, expecting that the lawyer has a sufficient understanding of the relevant facts, law, and prospects to make an intelligent recommendation. We therefore join the chorus of States that have rejected Muhammad.
We share the concern expressed by the Court of Special Appeals in Prande v. Bell that lawyers not be regarded as negligent simply because another lawyer, or even most lawyers, with the benefit of hindsight, would not have made the recommendation at issue. We also share that court's observation that the factors that the lawyer must consider in developing a settlement recommendation, as well as the recommendation itself, "are mostly subjective in nature," and that there can legitimately exist "a range for honest differences of opinion in making settlement recommendations." Id. at 656, 660 A.2d at 1065. Nonetheless, we see no reason to adopt any heightened standard of negligence. Lawyers, like doctors and other professionals, are often called upon to make judgment calls with which their colleagues may disagree. Those calls, if challenged, can be examined in the light of the traditional standard applicable to professional negligence actions. That is the standard applied by courts in other States, and we are aware of no indication that its application has caused any significant problem. The standard in Maryland is that announced in Cochrane v. Little, 71 Md. 323, 332, 18 A. 698, 701 (1889), and confirmed in Kendall v. Rogers, 181 Md. 606, 611, 31 A.2d 312, 314 (1943):
"[E]very client employing an attorney has a right to the exercise, on the part of the attorney, of ordinary care and diligence in the execution of the business intrusted to him, and to a fair average degree of professional skill and knowledge; and if the attorney has not as much of these qualities as he ought to possess, and which, by holding himself out for employment he impliedly represents himself as possessing, or if, having them, he has neglected to employ them, the law makes him responsible for the loss or damage which has accrued to his client from their deficiency or failure of application." 
B. The Measure and Proof of Damages

As we observed, the gravamen of Marsharina's complaint with respect to the settlement centered on the demand that Groscupthe unserved owner of 1217 East Preston Streetbe released along with the owners of the other two properties. Through her stipulation, she abandoned any assertion that $2,500 was an inappropriate amount for the release of the two paying defendants. Her position was that Thomas was negligent in recommending that, through Gerrine, she accede to the release of Groscup as a condition of the settlement with the two other defendantsthat, because Marsharina *1196 had a good case against Groscup, who had a $300,000 insurance policy, Thomas should have recommended that the settlement offer, with that condition, be rejected, and that the case be pursued against the three defendants. Consonant with her stipulation, Marsharina did not seek any damages arising from the release of the two paying defendants, implicitly accepting that, had the case proceeded against them, she would have received no more than the $2,500 she and her mother got. Consonant with her view that the case should have proceeded to trial against Groscup, Marsharina presented no evidence of what a reasonable settlement would have been with respect to Groscup or even that a settlement could have been effected with that defendant. The sole basis of her case against Thomas was that, upon his recommendation, a valuable case against Groscup was given away for no recompense. The only damages she sought from Thomas, therefore, was the amount she likely would have recovered from Groscup had the case proceeded to trialthe difference between that amount and zero.
Thomas urges that that was an inappropriate measure of damages. Citing LEGAL MALPRACTICE, § 29.38, 4th ed. (1996), he urges that, in a negligent settlement case, the measure of damages is the difference between the reasonable settlement value and what was, in fact, obtained in settlement. Without any supporting evidence, the jury found the reasonable settlement value of the case against Groscup to be $25,000, and, subject to his argument that no action at all should be permitted, Thomas contends that the maximum judgment permissible in this case would be $25,000.
Thomas's citation to LEGAL MALPRACTICE is misplaced. Those authors do not state, or even suggest, that the only measure of damages in a negligent settlement case is the difference between the actual settlement and a reasonable settlement. They simply point out that, among the various situations in which lawyers are charged with malpractice, are those in which the client seeks the difference between the amount paid or received and what should have been paid. In that setting, they point out that the plaintiff "not only must establish that concluding such a settlement fell outside the standard of care, but also what would have been a reasonable settlement and that such sums would have been agreed to and could have been paid." LEGAL MALPRACTICE, § 29.38 at 745. See, for example, Whiteaker v. State, 382 N.W.2d 112 (Iowa 1986), where the plaintiff claimed, alternatively, that his lawyer's negligence cost him a favorable judgment and a lost settlement opportunity. As to the latter, the plaintiff would have to prove that a settlement probably would have occurred.[6] If that is how the plaintiff frames the case, Thomas's view as to the measure of damages would be correct. If, for example, the client produces evidence that (1) the settlement recommended by the lawyer was one that a lawyer exercising reasonable skill, judgment, and diligence would not have recommended under the circumstances, (2) had that settlement offer not been accepted, the defendant in the underlying case would and could have settled for substantially more, and (3) that higher amount would have been a reasonable settlement, one that a lawyer exercising reasonable skill, judgment, and diligence would have recommended, the proper measure of damages would indeed be the difference between what reasonably could have been obtained and what, in fact, was obtained.
That kind of evidence is not easy to produce, however. Absent some compelling circumstances, the settling adversary in the underlying case is not likely to admit that, had the lawyer held out, it would have offered substantially more in settlement than was, in fact, offered, and evidence from other persons, either as to settlement value or as to the actual prospect of a better settlement, has been regarded as speculative. See, for example, Fuschetti v. Bierman, 128 N.J.Super. 290, 319 A.2d 781 (Law 1974); Merzlak v. Purcell, 252 Mont. 527, 830 P.2d 1278 (1991). Extraneous evidence of settlement value might be relevant to establish liabilitythat the settlement actually recommended and concluded was one that a lawyer exercising reasonable skill, judgment, and *1197 diligence would not have recommendedbut it cannot reasonably serve to establish the measure of damages absent a showing that the case would likely have been settled for the higher amount. A lawyer cannot be held liable for not having held out for a settlement that could not have been achieved in any event.
Because of the practical difficulties in establishing the reasonable prospect of a better settlement, and perhaps for other reasons as well, it is not uncommon for plaintiffs in the position of Marsharina to frame their case as it was framed here, to assert that, given the inadequacy of the settlement offer, the lawyer should have recommended that the offer be rejected and that the litigation be pursued to adjudication. When so framed, the measure of damages necessarily becomes the difference between what was accepted in settlement and what likely would have been received from the adjudication. That is the approach most commonly taken by the courts. See, for example, Grayson v. Wofsey, Rosen, Kweskin and Kuriansky, supra, 231 Conn. 168, 646 A.2d 195; Callahan v. Clark, supra, 321 Ark. 376, 901 S.W.2d 842; Baldridge v. Lacks, supra, 883 S.W.2d 947; McWhirt v. Heavey, supra, 250 Neb. 536, 550 N.W.2d 327.
The normal way in which that approach is implemented is through what has become known as a trial within a trial, or a suit within a suit, i.e., litigating before the malpractice jury the underlying case that was never tried. Mallen and Smith point out that "[t]his is the accepted and traditional means of resolving the issues involved in the underlying proceeding in a legal malpractice action" and "avoids speculation by requiring the plaintiff to bear that burden of producing evidence that would have been required in the underlying action." LEGAL MALPRACTICE, supra, § 32.8, 4th ed. and 1998 Supp.[7]See Pickett v. Haislip, 73 Md. App. 89, 533 A.2d 287 (1987); cert. denied, 311 Md. 719, 537 A.2d 273 (1988); Fishman v. Brooks, supra, 396 Mass. 643, 487 N.E.2d 1377 (1986); Haberer v. Rice, 511 N.W.2d 279 (S.D.1994); Nika v. Danz, 199 Ill.App.3d 296, 145 Ill.Dec. 255, 556 N.E.2d 873 (1990); Lieberman v. Employers Ins. of Wausau, 84 N.J. 325, 419 A.2d 417 (1980); Houghton v. Leinwohl, 135 Vt. 380, 376 A.2d 733 (1977); Herston v. Whitesell, 374 So.2d 267 (Ala.1979); Togstad v. Vesely, Otto, Miller & Keefe, 291 N.W.2d 686 (Minn.1980).
The "case within a case" or "suit within a suit" approach has been criticized on a number of groundsthat it does not represent an accurate or complete reconstruction of the original lawsuit; that the evidence may not be of the same quality as that which would have been offered in the underlying case; that there is an artificiality to it; that it is unfair to require the plaintiff to litigate the case against his or her own lawyer, who has superior knowledge about the strengths and weaknesses of the case, including knowledge obtained from the client's own confidences; and that, because the original defendant is not a party, the malpractice plaintiff may not have the benefit of discovery against that defendant to marshal evidence in support of his claim. See Developments in the LawLawyers' Responsibilities and Lawyers' Responses, 107 HARV. L.REV. 1557, 1568-69 (1994); Melissa A. Thomas, When Is an Attorney's Breach of Fiduciary Duty in Missouri Not Legal Malpractice?, 63 MO. L.REV. 595, 600-601 (1998); John Leubsdorf, Legal Malpractice and Professional Responsibility, 48 RUTGERS L.REV. 101, 148-150 (1995); Polly A. Lord, Loss of Chance in Legal Malpractice, 61 WASH. L.REV. 1479, 1480-1485 (1986). The courts have not seemed eager to adopt any of the alternatives that have been suggested, however, so the trial within a trial approach continues to be used. It was not an inappropriate method in this case.

C. The Evidence

To prevail under a trial within a trial approach, Marsharina was required to prove *1198 (1) that Thomas was negligent in recommending acceptance of the settlement; (2) that Groscup could have been served within a reasonable time in order to permit the action to proceed against it; (3) that Groscup was liable to Marsharina under a theory pled in the complaint against it and had no exculpating defense to the action; (4) that Marsharina suffered compensable injury; and (5) the amount of damages that (i) would have been awarded by the jury had the case against Groscup proceeded to trial, and (ii) would have been collectible with reasonable effort.
Although Thomas contends that the evidence produced by Marsharina was legally insufficient, his attack, to a large extent, is misdirected. Principally, he complains that no evidence was elicited as to what a reasonable settlement with Groscup would have been, or that one could have been effected. That was also the concern that led to the judgment N.O.V. As already discussed, however, that was not the basis of Marsharina's case, either as to liability or as to the measure of damages. The testimony of Mr. Brown, a conceded expert, sufficed to support the jury's determination that no reasonable attorney would have recommended acceptance of the settlement calling for the release of Groscup and that the case should have proceeded to trial. That determination, especially when based on the heightened standard of liability enunciated in Prande v. Bell, amounted to a determination of negligence on the part of Mr. Thomas.
Aside from noting the lack of evidence that Groscup ever could have been served, Thomas does not otherwise attack the sufficiency of the evidence relating to Groscup's liabilityi.e., that, had the case proceeded against Groscup, a favorable verdict would have resulted. The fact that, had the case proceeded, Groscup could have been served is something the jury could infer. The record does not indicate why Thomas had been unable to serve Groscup prior to the settlement, or, indeed, what efforts he made to obtain service, but the record does establish that Groscup was an existing corporation, apparently a Maryland corporation, that did business and owned property in Maryland, and that it was served in this case.
Thomas does not, in his brief, challenge the evidence leading to the jury's conclusions that Groscup was negligent "with regard to the presence of a lead paint hazard" and that the presence of lead paint at 1217 East Preston Street was a substantial factor in causing injury to Marsharina. Nor, except for urging a different standard for measuring damages, does Thomas challenge the evidence describing the injuries suffered by Marsharina, leading to the jury's determination that she sustained $125,000 in damages.[8]
On this record, we agree with the Court of Special Appeals that the judgment N.O.V. was in error.
JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.
CHASANOW, Judge, concurring and dissenting.
I concur in the majority's holding that a cause of action exists for legal malpractice by negligently recommending an inadequate settlement. I dissent from the portion of the majority opinion approving what the majority calls the "trial within a trial" procedure employed in the instant case. Lawyers too are entitled to justice when they are parties to litigation and I cannot think of a more unjust and unfair procedure than the "trial within a trial"[1] procedure used to determine the attorney's liability and the amount of the damages in the instant case.
Twelve years after the case against three separate landlords was settled, the plaintiff sues his former attorney for "[r]ecommending *1199 to the Plaintiff's mother the acceptance of a settlement which was grossly inadequate to cover the damages in the Plaintiffs case." The plaintiff presented evidence that the settlement was inadequate as to this defendant. Two alternative damage determinations were made by the jury. First, the jury found that the reasonable settlement value was $25,000, and second, the jury found that, based on the trial within a trial procedure, the verdict would have been $125,000. The jury either recognized that there were severe problems in proving the plaintiff's underlying case since the settlement value was only 20% of the verdict value (yet the jury found liability in the underlying case) or the verdicts graphically illustrate the injustice of the trial within a trial procedure for determining damages. I would affirm the $25,000 verdict for reasonable settlement value, but not the $125,000 award for what the majority calls a "trial within a trial."
Whether we view the cause of action as negligent recommendation of settlement or loss of a chance to obtain a favorable verdict at trial, the recovery should not be the "trial within a trial" damages. There was never any certainty that the plaintiff would have prevailed at his trial against the landlord; thus, the most the plaintiff lost by settling was not the full trial recovery against the landlord but the less than 100% probability of prevailing multiplied by the likely damages. If the plaintiff lost a 60% chance of recovery of a $100,000 verdict, the plaintiff lost $60,000. The plaintiff did not lose a 100% chance of prevailing nor 100% of the damages that might have been awarded against the landlord. The reasonable settlement value as well as the loss of a chance of prevailing at trial should both be computed by the likelihood of success weighed with the probable verdict in the event the jury finds liability. Both the damages for loss of a chance or damages for reasonable settlement value should be similar as both should recognize the chance that the plaintiff might not prevail in the underlying case. In addition, both should also take into account the savings in not having to pay trial expenses such as expert witnesses, discovery costs, etc. These are things that were not factored into the "trial within a trial" damages in the instant case.
Damages for recommending an inadequate settlement ought to be the reasonable settlement amount and the plaintiff ought not to have to prove that the case would have settled for that amount. In the absence of evidence to the contrary, we can assume both parties would wish to avoid litigation costs and trial uncertainties by settling a case at the reasonable settlement value. Reasonable settlement amounts can be calculated by juries. We assume in all tort cases that a jury can calculate the amount of damages, and similarly, juries should be able to determine the probability of a plaintiff's verdict in the underlying litigation. Settlement value is a product of these two as reduced by the savings in litigation expenses. In addition, there will be some expert testimony as to reasonable settlement value as part of the plaintiff's proof of liability and it is probable the defendant will also have expert testimony on this issue.
In contrast to the determination of reasonable settlement value, the trial within a trial procedure is grossly unfair to the defendant attorney because it permits irrelevant and highly prejudicial evidence to serve as a basis for the jury's findings. In the instant case, the plaintiff had to prove liability by evidence that the settlement was inadequate. To do this the plaintiff must call other attorneys to testify about the likelihood of success in the underlying case, i.e., that a reasonable jury probably would have found for the plaintiff and that the settlement amount was far less than what a reasonable jury would probably award. This testimony will obviously influence the jury in their "trial within a trial" deliberations. In addition, an attorney representing a client will probably reassure the client by estimating the probability of success and the probable verdict with the utmost optimism and will do so in communications with any insurance adjuster and opposing counsel. The attorney when filing suit will unquestionably present the client's case and the client's damages in the best possible light and will base the ad damnum clause on the highest conceivable award. Under the trial within a trial procedure approved in the instant case, all of those statements by the attorney come into evidence against the attorney as admissions by a party-opponent. *1200 It seems absurd to have a trial within a trial where a plaintiff's declaration and ad damnum clause can be used to prove the plaintiff's liability and damages, and this is in addition to allowing expert attorney witnesses to tell the jury their assessment of liability and their opinion as to what a reasonable damage award should be.
In the instant case, the plaintiff acknowledges in his brief that "Christopher Brown, Esquire, after being duly qualified as an expert by the Court, testified that in his opinion the settlement recommended by Mr. Thomas was one which no reasonable attorney under the circumstances would have recommended. He evaluated the underlying lead poisoning case as a `very strong case, and as a consequence a case which should be off to a trial for however much the jury determines is an appropriate sum.'" The trial within a trial is obviously not a recreation of the underlying tort trial because this testimony that is necessary to prove the attorney's liability for giving unreasonable advice as to settlement would not have been admissible in the underlying tort trial. In addition, since plaintiff's former attorney is now a defendant, the attorney's prior positive statements about the plaintiff's case and even the declaration prepared by the attorney were admissible as admissions by a party-opponent. Plaintiff called the defendant attorney as one of his primary witnesses and brought out the following:
"[Plaintiff's Counsel]: I want to hand you what has been marked as plaintiff's exhibit number 10. At the moment it is for identification. Tell me if you can identify that document?
[Defendant]: Yes, I can.
[Plaintiff's Counsel]: What is it?
[Defendant]: It is the complaint, with the power of attorney to bring suit as next friend dated August 31, 1981 attached to it on the back.
[Plaintiff's Counsel]: Does it bear your signature?
[Defendant]: Yes, it does.
[Plaintiff's Counsel]: Was that filed by you in the circuit court in Marsharina Bethea's case?
[Defendant]: I caused it to be filed in the court, yes. There would have been a jury trial prayer attached to it as well.
[Plaintiff's Counsel]: I'll offer this into evidence.
[The Court]: That's plaintiff's exhibit what?
[Plaintiff's Counsel]: It is marked ten, your honor.
[The Court]: All right. Plaintiff's exhibit 10 admitted in evidence.
[Plaintiff's Counsel]: Now Mr. Thomas, if you would, could you read that, I think that is called the declaration, is that correct?
[Defendant]: Yes.
[Plaintiff's Counsel]: Would you look at the ad damnum clause? What is the ad damnum clause, that tells how much you are suing for, correct?
[Defendant]: Yes.
[Plaintiff's Counsel]: Can you read that ad damnum clause to the jury?
[Defendant]: One million dollars.
[Plaintiff's Counsel]: I'm sorry?
[Defendant]: One million dollars.
[Plaintiff's Counsel]: Have you seen this?
[Defendant's Counsel]: Yes.
[Plaintiff's Counsel]: And in that declaration Mr. Thomas, is it true that again you had alleged that the child had suffered permanent and irreparable brain damage?
[Defendant]: Yes.
[Plaintiff's Counsel]: And you announced that three separate groups of landlords had inflicted that injury upon Marsharina Bethea by their violations of the Maryland state law. Isn't that correct?
[Defendant]: Three different properties, yes.
[Plaintiff's Counsel]: That's what I'm saying, there was 209 East Lafayette Avenue, you sued correct?
[Defendant]: Yes.
[Plaintiff's Counsel]: 1322 Myrtle Avenue you sued, is that correct?
[Defendant]: Yes.
[Plaintiff's Counsel]: And 1217 East Preston Street you sued, is that correct?
[Defendant]: Yes.
[Plaintiff's Counsel]: And at the time that you filed that complaintI'm sorry, declaration, it was your belief as an officer of *1201 the court that it was well founded in fact and in law, is that correct?
[Defendant]: Yes.
[Plaintiff's Counsel]: And you so certified as an attorney when you filed a document with the court, isn't that correct?
[Defendant]: That is right."
Under the trial within a trial procedure approved by the court, since the plaintiff's former attorney is now a party defendant, the pleadings filed by the attorney on behalf of the plaintiff and the prior optimistic statements and high damage estimates made by the attorney on behalf of the plaintiff are now admissions by a party-opponent. See Maryland Rule 5-803(a)(1) admitting "[t]he party's own statement, in either an individual or representative capacity."
Any attorney who has ever settled a plaintiff's case or contemplates settling a plaintiff's case should carefully read the majority's opinion. As a result of this decision, any plaintiff who has accepted an attorney's advice to settle a claim merely has to find another attorney to opine that the settlement was inadequate and should not have been recommended. This should not prove too difficult. The client can then file suit to seek the verdict value of the case without the risks and costs that would have been associated with the underlying trial, and the plaintiff can use the declaration filed by the attorney, the letters written to the insurance adjuster, the initial settlement demands and all the positive things the attorney told the client about the case as admissions to prove liability and damages. In addition, the jury will hear from other "expert" lawyers about the merits of the underlying cause of action and the probable amount a reasonable jury would award. The jury will probably be less sympathetic to an attorney than it would have been to the real defendant, especially when the attorney is forced to switch hats and now disparage the former client's case that the attorney had previously been extolling. This is not a "trial within a trial," it is a "debacle within a trial." What tort trial would permit the plaintiff's declaration to serve as proof of liability and damages? What tort trial would permit an "expert" attorney to testify as to the defendant's probable liability and what a reasonable damage award would be? This Court would not permit any other class of tort defendants to be judged as unfairly as it permits attorneys to be judged in legal malpractice cases. I would affirm the $25,000 reasonable settlement value award and not the $125,000 "trial within a trial" award.
Judge CATHELL has authorized me to state that he joins the views expressed in this concurring and dissenting opinion.
NOTES
[1] The record shows the elder Ms. Bethea's name sometimes as Gerinne and sometimes as Gerinna. The child, Marsharina, was married by the time of trial in this case. Her current surname is Gillard.
[2] As we indicated, there was a significant dispute over the propriety of Mr. Thomas's conduct. Thomas stated that the case against Groscup was weak, in part because of conflicts in the evidence, that Gerinne insisted that the case be settled, and that he got the best settlement possible. His expert, George Russell, Esq., opined that "the settlement made by Mr. Thomas was not only reasonable but because of the problems he had in the case was ultimately a gift because had the case gone to trial he could not have won the case...."
[3] Several attorneys from the firm were involved in the events that led up to the settlements. For the sake of convenience only, we shall refer to all of them, collectively, as Bell, notwithstanding that other attorneys in the firm were more directly involved than Mr. Bell.
[4] Lurking in some of these cases, of course, is the prospect that, if the settlement recommendation proceeded from an inadequate investigation of the relevant facts or law, as opposed to a simple misjudgment as to what a court might do if the case proceeded, that same inadequacy could well become manifest at trial and result in a less favorable verdict than otherwise might be obtained. In that situation, subject to adequate proof, a malpractice case would likely lie against the attorney, and the question is fairly raised whether a different result should pertain because the lawyer's failings resulted in a lower recovery through settlement.
[5] In Becker, a panel of the appellate division recognized the cause of action and held that it was not barred by the fact that the underlying case was settled. In N.A. Kerson Co. v. Shayne, Dachs, Etc., 59 A.D.2d 551, 397 N.Y.S.2d 142 (1977), a different panel had concluded otherwise. One judge of that panel concurred in the result based on the lack of evidence that the plaintiff would have done better had the litigation continued, not because the action was barred by the settlement. The New York Court of Appeals affirmed in Kerson, but for the reasons stated in the concurring opinion. See 45 N.Y.2d 730, 408 N.Y.S.2d 475, 380 N.E.2d 302 (1978). Subsequent attempts in New York to hold a lawyer liable for malpractice in a case that was settled have generally foundered because of insufficient evidence that the plaintiff would have done better, but, based on Kerson, it appears that settlement of the underlying action is not a bar to a malpractice claim, and that a plaintiff can recover upon a showing that "the settlement entered into was improvident and that [the plaintiff] would have been entitled to a more beneficial settlement, but for the defendant's alleged misconduct." Rapp v. Lauer, 229 A.D.2d 383, 644 N.Y.S.2d 569 (1996); see also Laing v. Bushin, 149 A.D.2d 351, 540 N.Y.S.2d 14 (1989); Rogers v. Ettinger, 163 A.D.2d 257, 558 N.Y.S.2d 540 (1990).
[6] Judge Chasanow, in dissent, would hold that the plaintiff does not have to prove that the case could have settled at a higher amount. He cites no authority for such a proposition, and we know of none.
[7] There are circumstances in which the issue of whether the plaintiff would have prevailed in the underlying case is more appropriate for a court to determine, rather than a jury. See, for example, Daugert v. Pappas, 104 Wash.2d 254, 704 P.2d 600 (1985), where the alleged negligence was in failing to perfect an appeal. Recognizing that, normally, the determination of whether the plaintiff would have been successful, but for the lawyer's negligence, is a jury issue, the court held that, in determining whether appellate review would have been granted and, if granted, would have been successful depended on an analysis of the law and appellate procedure and that a judge was in a better position than a jury to make those determinations.
[8] Judge Chasanow, in dissent, complains about the ad damnum demand in the complaint drafted and filed by Thomas being used as evidence against him. Thomas has made no such complaint in his brief, and we therefore need not address in this case whether the admission of that document, for that purpose, was proper.
[1] I have no doubt that there may be differing procedures employed for a "trial within a trial" and that a trial within a trial may often be unjust to the client as well as the attorney, for example, where the attorney's negligence has resulted in the loss of vital evidence necessary to prove the plaintiff's claim. The "trial within a trial" procedure at issue is the procedure used in the instant case. There may be times when some acceptable form of trial within a trial procedure might be justifiable, but it should not be anything like the "trial within a trial" in the instant case.