UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JEFFREY A. BRIGGS, M.D.,
Plaintiff-Appellant,

v.

GILL COCHRAN, Esquire,

Defendant-Appellee,

No. 98-2439

BOARD OF PHYSICIAN QUALITY
ASSURANCE,
Movant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CA-95-3499-L)

Argued: September 23, 1999

Decided: December 7, 1999

Before MURNAGHAN and MOTZ, Circuit Judges, and
GOODWIN, United States District Judge for the Southern District
of West Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Goodwin wrote the opinion,
in which Judge Murnaghan and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** John G. Gill, Jr., GILL & SIPPEL, Rockville, Maryland,
for Appellant. Shirlie Norris Lake, ECCLESTON & WOLF, Balti-

more, Maryland, for Appellee. **ON BRIEF:** Hamilton F. Tyler, ECCLESTON & WOLF, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

GOODWIN, District Judge:

This legal malpractice action arises from the allegedly negligent legal services provided by Gill Cochran to Dr. Jeffrey A. Briggs, M.D., with respect to disciplinary complaints filed against Dr. Briggs. The district court granted Cochran's motion for summary judgment. We find that Briggs has failed to produce any evidence to establish a causal connection between Cochran's conduct and the harm suffered by Briggs. Accordingly, we affirm.

I.

Dr. Jeffrey A. Briggs, M.D., was a member of a successful OB/GYN practice in Annapolis, Maryland. In 1992, two of his former patients filed complaints against him with the Maryland Board of Physician Quality Assurance (Board).[1] The patients alleged that Briggs had engaged in sexual and ethical misconduct.

The first patient, Patient A, claimed that she was sexually involved with Briggs and that he attempted to impregnate her at least twice. When Patient A became pregnant, Briggs performed diagnostic pregnancy tests on her without documenting the tests and referred her, under a false name, to another physician for an abortion. Patient A alleged that Briggs then prescribed post-operative medication for her

_____

[1] The Board investigates and disciplines physicians who violate the Maryland Medical Practice Act, Md. Code Ann., Health Occ. § 14-101 et seq.

2

and inserted an Intra-Uterine Device (IUD) without documenting the procedure. Finally, Patient A claimed that Briggs impregnated her a second time and performed an after-hours, undocumented aspiration of the fetus without her written consent.

The second patient, Patient B, alleged that Briggs used his position as a gynecologist to manipulate her into a sexual relationship and then abandoned her after impregnating her. Patient B further claimed that Briggs failed to document his medical treatment of her and improperly prescribed drugs for her use.

As the district court indicated, Briggs admitted that he engaged in a sexual relationship with Patient A, who had been a patient of his medical practice. He conceded that he impregnated Patient A and referred her, under a false name, to another physician for an abortion. He further stated that he performed after-hours procedures on Patient A without documenting them. Finally, Briggs also admitted that he aspirated a second fetus that Patient A claimed he fathered.

Briggs retained Gill Cochran to represent him before the Board. After consulting other attorneys with prior experience before the Board, Cochran advised Briggs to surrender his medical license voluntarily. Cochran believed that voluntary surrender of Briggs's license would forestall the filing of formal charges by the Board and would place Briggs in a stronger negotiating position. Following Cochran's advice, Briggs voluntarily surrendered his medical license on November 19, 1992.

One week later, Briggs discharged Cochran and retained new counsel. His new counsel pursued a more aggressive defense strategy that included requesting the Board to appoint an administrative prosecutor and to file formal charges against Briggs. After several draft charges, the Board formally charged Briggs with violating the Maryland Medical Practice Act (Act). The Act provides that the Board may reprimand a licensee, place a licensee on probation, or suspend or revoke a license if the licensee "[i]s guilty of immoral or unprofessional conduct in the practice of medicine." Md. Code Ann., Health Occ. § 14-404(a)(3).

Briggs attended several Case Resolution Conferences before a committee of the Board in order to resolve the charges against him.

3

Briggs's counsel proposed that the Board suspend Briggs's license for one year, with the last three months stayed as a result of Briggs's cooperation with the Board. The Board rejected the proposal and suspended Briggs's license for one year with no stay for cooperation.

II.

Briggs filed a legal malpractice action against Cochran, alleging, <u>inter alia</u>, that Cochran's investigation of the charges and legal advice that Briggs surrender his license constituted professional negligence. Briggs argues that by surrendering his license, he lost the opportunity to defend the charges adequately and vigorously and that based on his surrender, the Board assumed that his patients' allegations were accurate. Briggs maintains that the Board would not have suspended his license, or would have imposed a lesser sanction, had Cochran presented a proper defense.

During discovery, Briggs's expert stated that Cochran's investigation and advice to Briggs were in fact inadequate. The expert, however, was unwilling to testify as to whether the Board would have suspended Briggs's license had Cochran defended the case differently. Cochran moved for summary judgment, arguing that as a matter of law, Briggs is unable to establish causation without expert testimony. Briggs responded that causation in this case can only be resolved by the "trial within a trial" method, which he argues does not require expert testimony or any evidence of causation. The district court determined that expert testimony was necessary for Briggs to establish causation and therefore entered summary judgment for the defendant. We agree that summary judgment was appropriate for a more basic reason. Briggs failed to produce any evidence that Cochran's negligence was a proximate cause of the one-year suspension of Briggs's license.

III.

The standard of review on appeal from an order granting a motion for summary judgment is <u>de novo</u>. <u>Halperin v. Abacus Tech. Corp.</u>, 128 F.3d 191, 196 (4th Cir. 1997). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

4

is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is taken as true and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Halperin, 128 F.3d at 196.

IV.

A.

To establish a legal malpractice claim against Cochran, Briggs must prove the following: (1) that he employed Cochran; (2) that Cochran neglected a reasonable duty; and (3) that Cochran's neglect proximately caused a loss to Briggs. Maryland Cas. Co. v. Price, 231 F. 397, 401 (4th Cir. 1916); Flaherty v. Weinberg, 492 A.2d 618, 624 (Md. 1985); Kendall v. Rogers, 31 A.2d 312, 315 (Md. 1943). In Maryland, as in other states, an expert is generally required to testify about an attorney's standard of care and its breach in an individual case. Hooper v. Gill, 557 A.2d 1349, 1351 (Md. Ct. Spec. App. 1989). Briggs's employment of Cochran is undisputed, and Briggs provided expert testimony concerning Cochran's standard of care and its breach. The issue on appeal concerns causation.

B.

Briggs's legal malpractice action cannot survive summary judgment if he is unable to present evidence of a causal connection between Cochran's breach of duty and the damages suffered by Briggs. See Stone v. Chicago Title Ins. Co. of Maryland, 624 A.2d 496, 500-02 (Md. 1993); Fairfax Sav., F.S.B. v. Weinberg & Green, 685 A.2d 1189, 1196 (Md. Ct. Spec. App. 1996). Legal malpractice actions are governed by the same principles that apply in other negligence actions. Maryland Cas., 231 F. at 402-03. Therefore, Briggs "must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [Cochran] was a cause in fact of the result. A mere possibility is not enough." W. Page Keeton et al., Prosser & Keeton on Torts 269 (5th ed. 1984).

5

1.

Cochran argues that Briggs cannot establish causation in the absence of an expert willing to testify that the Board would have left Briggs's license intact, or would have imposed a lesser sanction, if Cochran had defended the case differently. It is not, however, the lack of expert testimony that compels us to affirm the decision of the district court. Although we recognize that many legal malpractice cases require expert testimony to establish causation, see, e.g., Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C. , 515 N.E.2d 891 (Mass. App. Ct. 1987) (finding expert testimony necessary to establish that, in absence of attorney's negligence, plaintiff would likely have obtained temporary restraining order from three-judge panel); 2175 Lemoine Ave. Corp. v. Finco, Inc., 640 A.2d 346 (N.J. Super. Ct. App. Div. 1994) (finding that expert testimony is necessary to show that in the absence of attorney negligence, the complex commercial transaction could have been legally structured), we do not hold that expert testimony is necessary to prove causation in this case. Our concern is that Briggs has failed to offer any evidence of any kind that affords a reasonable basis for the conclusion that Cochran's negligence was a proximate cause of the one-year suspension of Briggs's license. Instead of producing such evidence, Briggs submits that the result of a "trial within a trial" may be a substitute for proof of causation.

2.

Under the "trial within a trial" method,**2** a plaintiff in a legal malpractice action is given the opportunity to litigate before the malpractice jury the underlying case as it would have been tried in the absence of the attorney's negligence. Briggs invokes this model as follows: (1) the jury would hear the patients' case against Briggs as the Board would have heard it had Cochran presented a proper defense; (2) taking the place of the Board, the jury would decide what sanctions, if any, Briggs should receive for his sexual and ethical misconduct. If the jury would decide not to suspend Briggs's license, or decide to impose a lesser sanction, Briggs argues that one should then

_____

**2** This method is also referred to as the "suit within a suit" or "case within a case" model.

6

conclude that the suspension actually imposed by the Board was a proximate result of Cochran's negligent representation.

Such a conclusion requires a cognitive leap over the fundamental principle that causation must be proven. In these circumstances, it is simply illogical to infer that any difference in sanctions imposed by a jury and those imposed by the Board would necessarily result from the difference in the presentation of Briggs's defense. Such an inference is raw speculation that ignores the normal variation inherent in decisions made by juries and other adjudicatory bodies.

Although Maryland has used the "trial within a trial" in a recent legal malpractice case, that case involved circumstances that do not implicate this analytical problem. In Thomas v. Bethea, 718 A.2d 1187 (Md. 1998), the client sued his attorney for malpractice, alleging that the attorney negligently recommended an inadequate settlement. Id. at 1188-89. The Court of Appeals of Maryland determined that a "trial within a trial" was the appropriate method for calculating damages by determining whether the client would have prevailed in the underlying case. Id. at 1197. The malpractice jury decides what the client should receive from adjudication of his underlying claim, and the client's damages are the difference between that amount and the amount accepted at settlement. Id.

A "trial within a trial" is arguably appropriate in cases like Thomas in which the attorney's negligence completely forecloses the client's claim from proceeding to adjudication. Causation is clear in such cases -- the attorney's breach of duty triggers the complete legal closure or loss of the client's claim or defense. The client therefore uses the "trial within a trial" not to establish loss causation, but rather to prove what, if any, harm arose from the loss of his claim. If the "trial within a trial" jury determines that the claim was meritorious, it then decides the damages. If the jury finds that the claim lacked merit, the attorney's negligence could not have harmed the client.

We recognize that there is some authority for the proposition that a "trial within a trial" is a substitute for proving causation in all legal malpractice cases. See, e.g., Chocktoot v. Smith, 571 P.2d 1255, 1257 (Or. 1977) (en banc). However, when causation is not patent, Maryland law is clear that a plaintiff in a legal malpractice case must affir-

7

matively prove that the attorney's negligence proximately caused a loss to the client.[3] See, e.g., Stone, 624 A.2d at 500-02; Flaherty, 492 A.2d at 624; Fairfax Sav., 685 A.2d at 1196.

V.

In the absence of any evidence that Cochran's negligence caused the Board's suspension of Briggs's license, we conclude that the law of Maryland would not have a jury second guess the Board's decision that Briggs's reprehensible conduct deserved a one-year suspension of his license. We affirm the grant of summary judgment.

AFFIRMED

_____
[3] Briggs relies upon Chocktoot v. Smith, 571 P.2d 1255 (Or. 1977) (en banc), and Pickett, Houlon & Berman v. Haislip , 533 A.2d 287 (Md. Ct. Spec. App. 1987), in arguing that Maryland law supports the use of a "trial within a trial" in this case. Contrary to Briggs's assertion, the Pickett court did not adopt the premise in Chocktoot that a "trial within a trial" is appropriate for establishing causation. Rather, the court cited Chocktoot in support of its assertion that juries are capable of determining the damages in a legal malpractice case when the negligence concerned an issue decided by a court rather than by a jury. Pickett, 533 A.2d at 297.

8